23-6119(L)
*United States v. Blondet*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-six.

PRESENT:
        ROBERT D. SACK,
        SUSAN L. CARNEY,
        MARIA ARAÚJO KAHN,
           *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

      v.
                              23-6119(L), 23-6133(CON)

LUIS BLONDET, AKA CABEZON, JULIO MARQUEZ-ALEJANDRO, AKA CHINO MONTERO,

*Defendants-Appellants,*[*]

WILLIAM ROBLES, OSCAR VALDEZ-GARCIA, AKA PONY, JASON DONES-GONZALEZ, AKA JASON, AKA ARRABAL, JOSE VICTOR PELLOT-CARDONA, AKA VITITO, REINALDO CRUZ-FERNANDEZ, AKA REMY, RALPH LABOY, WILLIAM VASQUEZ-BAEZ, JOSE MARTINEZ-DIAZ, AKA TONY ZINC, FERNANDO GOMEZ, ORLANDO CARMONA SERRANO, AKA THE BARBER, JORGE ASENCIO-VIERA,

*Defendants.*

———————————————————————

FOR DEFENDANT-APPELLANT BLONDET:
JOSHUA L. DRATEL, Law Offices of Dratel and Lewis, New York, NY (Amy E. Greer, Law Offices of Dratel and Lewis, New York, NY; Louis M. Freeman, Freeman, Nooter & Ginsburg, New York, NY, *on the brief*).

FOR DEFENDANT-APPELLANT MARQUEZ-ALEJANDRO:
EDWIN J. PRADO-GALARZA, Prado Law Offices, Santurce, PR.

FOR APPELLEE:
PETER J. DAVIS, Assistant United States Attorney (Jamie Bagliebter, Jacob R. Fiddelman, Justin V. Rodriquez, James

---

[*] The Clerk of Court is respectfully directed to amend the case caption as indicated above.

Ligtenberg, Assistant United States Attorneys, Of Counsel, *on the brief*), *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

Appeals from judgments of the United States District Court for the Southern District of New York (Jesse M. Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

## BACKGROUND

This appeal arises out of Defendants-Appellants Luis Blondet's ("Blondet") and Julio Marquez-Alejandro's ("Marquez-Alejandro") roles in *La Organization de Narcotraficantes Unidos* ("La ONU"), an alliance of drug-trafficking organizations based in public housing projects in and around San Juan, Puerto Rico, including the Manuel A. Perez ("MAPA") and San Jose public housing projects.[1] Marquez-Alejandro, one of La ONU's founders and leaders, was the leader of the MAPA

---

[1] "In reviewing a criminal conviction, we view the evidence in the light most favorable to the government." *United States v. Desposito*, 704 F.3d 221, 223 n.1 (2d Cir. 2013).

crew. Blondet, also a La ONU leader and one of Marquez-Alejandro's closest allies and eventual successors, was a member of the MAPA and San Jose crews. La ONU was formed in or about 2004 and, through 2016, its members and associates committed numerous murders and violent crimes; distributed thousands of kilograms of cocaine, including to the Bronx, New York; and routinely bribed corrupt police officers to assist in the same.

Blondet was initially indicted and pleaded guilty to conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Prior to Blondet's sentencing on that conviction, a grand jury returned a superseding indictment (the "Indictment") charging Blondet and Marquez-Alejandro with, *inter alia*, racketeering conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(d) ("Count One"). The Indictment also charged Blondet with murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 ("Count Two"), and murder through the use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and 2 ("Count Three"), in connection with the 2005 murder of Crystal Martinez-Ramirez ("Martinez-Ramirez").

In addition to the racketeering conspiracy charge, which was charged against both Defendants, Marquez-Alejandro was charged in the Indictment with

four counts of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2, four counts of murder in connection with a drug crime, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2, and four counts of murder through the use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and 2, for the murders of Jean Adorno-Caballero, Ken Gonzalez-Rodriguez, Israel Crespo Cotto, and Carlos Barbosa.

Blondet and Marquez-Alejandro were tried together in early 2022. After a three-week jury trial, they were convicted on all counts that were presented to the jury.[2] Blondet was ultimately acquitted of Counts Two and Three on a post-verdict motion for judgment of acquittal, as explained in greater detail below, and he was sentenced to 600 months' imprisonment for Count One and 240 months' imprisonment for conspiracy to distribute five kilograms or more of cocaine, each to be served concurrently, followed by five years' supervised release. Marquez-Alejandro was sentenced principally to concurrent life imprisonment terms on each of his seven counts of conviction, followed by five years' supervised release.

Blondet and Marquez-Alejandro now challenge their convictions in this

---

[2] The government did not present to the jury the counts relating to the murders of Jean Adorno-Caballero and Ken Gonzalez-Rodriguez.

consolidated appeal,[3] both raising evidentiary challenges and alleging constructive amendment of the Indictment. Individually, they raise numerous other challenges. Blondet claims that the district court: (i) abused its discretion in denying his motion for severance, (ii) erred in not ordering a new trial on Count One, after acquitting him on Counts Two and Three, under the doctrine of "retroactive misjoinder," and (iii) erred by considering at sentencing charged conduct for which he was acquitted. Marquez-Alejandro raises claims of insufficiency of evidence, improper venue, statute of limitations, prosecutorial misconduct, and cumulative error. For the reasons set forth below, we affirm the judgments of conviction.

We assume the parties' familiarity with the remaining facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## DISCUSSION

I.      **Joint Challenges**

    **A. Prior Act Evidence**

---

[3] Blondet does not challenge the conviction from his guilty plea of conspiracy to distribute five kilograms or more of cocaine.

Blondet and Marquez-Alejandro argue that the district court abused its discretion in admitting testimony from two cooperating witnesses and former La ONU members regarding the witnesses' participation in multiple drug-related murders alongside Marquez-Alejandro and/or Blondet that predated the formation of La ONU (the "Pre-La ONU Murders"). In particular, they contend that such evidence was inadmissible under Federal Rules of Evidence 404(b) and 403. We review the district court's evidentiary ruling "for an abuse of discretion and recognize that district courts enjoy broad discretion over the admission of evidence." *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001) (citation omitted).

Federal Rule of Evidence 404(b) "prohibits the admission of evidence of prior crimes, wrongs, or acts to prove the defendant's propensity to commit the crime charged." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (internal quotation marks omitted). Under this Circuit's "inclusionary approach," however, prior act evidence is admissible under Rule 404(b) "if offered for any purpose *other than* to show a defendant's criminal propensity." *United States v. Williams*, 930 F.3d 44, 62 (2d Cir. 2019) (internal quotation marks omitted). For example, evidence of prior bad acts is admissible "to inform the jury of the

7

background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Dupree*, 870 F.3d at 76.

Here, the challenged testimony was admissible as relevant background of the formation of La ONU and some of the substantive offenses charged. The evidence explained the relationships between Blondet and Marquez-Alejandro, as well as their relationships with the co-conspirators and other members and leaders of La ONU. Evidence of the Pre-La ONU Murders, which were committed by the Defendants along with others who would become members of La ONU, demonstrated the relationships of trust that led to the Defendants' participation in the organization. It also explained the relationships between the Defendants and the victims of the substantively charged murders. In sum, the challenged evidence established that Marquez-Alejandro was a leader of the MAPA crew that, along with other groups, formed the La ONU enterprise, in which Marquez-Alejandro and Blondet rose to power. We have repeatedly held that such evidence is relevant and admissible as background information of a charged conspiracy. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (finding that evidence of "pre-existing drug-trafficking relationship" was admissible to further the "jury's

8

understanding of how the instant transaction came about and [the parties'] role in it"); *see also United States v. Diaz*, 176 F.3d 52, 80 (2d Cir. 1999) (affirming admission of testimony relating to prior uncharged drug dealing "because it informed the jury how the [enterprise's] racketeering and drug conspiracies evolved, and how illegal relationships and mutual trust developed between co-conspirators"); *United States v. Coiro*, 922 F.2d 1008, 1015–16 (2d Cir. 1991) (affirming the admission of prior arrest evidence for similar reasons).

Apart from constituting relevant background information, this evidence was also admissible to explain the prior bad acts of the government's witnesses. It was appropriate for the government to elicit during their direct testimony the information about the Pre-La ONU Murders that its own cooperating witnesses had participated in and pleaded guilty to. *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). Failing to do so would risk creating the appearance that the government was concealing from the jury damaging evidence affecting their credibility. *See id.*

Nor was the testimony unduly prejudicial under Rule 403. The probative value of the evidence of the Pre-La ONU Murders was not substantially outweighed by the risk of unfair prejudice because that evidence was not more

disturbing than the evidence admitted of numerous murders and other violent acts perpetrated in furtherance of the racketeering conspiracy. *See Roldan-Zapata*, 916 F.2d at 804. The district court avoided any undue prejudice by limiting the government's presentation of the evidence (in the court's words) to "the minimum necessary to make the arguments that it wishes to make." Blondet App'x at 288. In addition to the sanitized way in which the government introduced the evidence, the district court carefully instructed the jury that it "may not consider evidence of either defendant's conduct from before 2004 as a substitute for proof that either or both defendants committed the charged crimes," or "as proof that either defendant has a bad character or a propensity to commit crimes." *Id*. at 315; *see also United States v. Kaplan*, 510 F.2d 606, 611 (2d Cir. 1974) (noting that "juries must be supposed usually to be able and determined to follow instructions").

We thus conclude that the district court acted within its discretion in admitting evidence of the Pre-La ONU Murders.

### B. Constructive Amendment of the Indictment

Both Defendants also claim that the government constructively amended the Indictment by presenting evidence of criminal activity not specified as predicate acts in the Indictment. Because Blondet properly preserved the

10

constructive amendment challenge, our review is *de novo*.[4]  *See United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018).

"A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted."  *Id.*  But a racketeering conspiracy charge "need not specify the particular predicate or racketeering acts that the defendants agreed would be committed."  *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011).  Instead, "it is sufficient [for the government] to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity."  *Id.*

The evidence of predicate criminal acts presented at trial, including of the uncharged murders, falls squarely within the language of the Indictment, which alleges that between approximately 2004 and 2016, the Defendants engaged in "a pattern of racketeering activity . . . consisting of multiple acts involving murder,

---

[4] For the first time on appeal, Marquez-Alejandro claims that the introduction of evidence regarding "at least eight uncharged homicides" constructively amended the Indictment. Marquez-Alejandro Br. at 110–27.  A constructive amendment claim raised for the first time on appeal is subject to plain error review.  *United States v. Bastian*, 770 F.3d 212, 219 (2d Cir. 2014).  But, given the overlap of the issues between Blondet's preserved constructive amendment argument and Marquez-Alejandro's unpreserved argument, we will review both of the Defendants' constructive amendment claims *de novo*.

11

. . . offenses involving trafficking in controlled substances, . . . and multiple acts involving bribery," in violation of various articles of the Puerto Rico Penal Code and federal law. Blondet App'x at 206. "[T]here is no constructive amendment when the proof at trial does no more than supply the particulars." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016). Here, the racketeering charges were sufficiently particular to inform the Defendants of the "*core of criminality* to be proven at trial." *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992)). In the context of a racketeering conspiracy charge, our Circuit does not require that the indictment allege, or a jury find, specific predicate acts. *See Applins*, 637 F.3d at 81–82. Although Blondet encourages us to reconsider *Applins*, "*Applins* remains good law in this Circuit, and thus we are bound by it." *United States v. Pollok*, 139 F.4th 126, 135 n.3 (2d Cir. 2025).[5] The record in this case does not support a finding of constructive amendment.

---

[5] Blondet also argues, in the alternative, that permitting evidence of uncharged predicate acts to be admitted at trial rendered the racketeering conspiracy statute unconstitutionally vague as applied to him. We reject Blondet's contention that the presentation of evidence of predicate acts in a manner consistent with *Applins* rendered the racketeering conspiracy statute unconstitutionally vague as applied to him. RICO is "plainly intended to encompass the illegal activities of organized crime," *Coiro*, 922 F.2d at 1017, and Blondet's proven conduct falls squarely within the statute's prohibitions, *cf.*

## II. Blondet's Challenges

### A. Severance

Blondet argues that the district court abused its discretion in denying his motion for severance from Marquez-Alejandro's trial. Specifically, he claims that he was entitled to a separate trial because, unlike Marquez-Alejandro, he was willing to forgo cross-examination of the government's cooperating witnesses regarding the Pre-La ONU Murders that they committed. Blondet reasons that the evidence of those murders would not have been admissible if he was tried separately. But this reasoning is flawed because, as the district court aptly noted, that evidence was admissible against Blondet for independent reasons.

The decision to sever is "committed to the sound discretion of the trial judge," and we will not override an exercise of that discretion absent "clear abuse." *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988). "[T]he denial of a severance motion should be reversed only when a defendant can show prejudice so severe as to amount to a denial of a constitutionally fair trial, or so severe that

*Copeland v. Vance*, 893 F.3d 101, 119 (2d Cir. 2018) (rejecting vagueness arguments where the misconduct at issue "fell within the core of the statute's prohibition" (citations and internal quotation marks omitted)); *see also* 18 U.S.C. § 1961(1) ("racketeering activity" includes "any act or threat involving murder, . . . bribery, . . . or dealing in a controlled substance or listed chemical").

his conviction constituted a miscarriage of justice." *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002) (citation and internal quotation marks omitted).

Blondet has not carried this "heavy burden." *United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020), *as amended* (Sept. 1, 2020) (quoting *Chang An-Lo*, 851 F.2d at 556). His severance argument turns on the proposition that, had he been tried separately, the Pre-La ONU Murder testimony would have been inadmissible based on his offer not to cross-examine those witnesses about that conduct.[6] The district court correctly found that, as with Marquez-Alejandro, the testimony was also admissible against Blondet as background information relevant to the creation of La ONU and the respective relationships of its members. Blondet App'x at 286–88. And the testimony revealed that Blondet directly participated in at least four of the Pre-La ONU Murders. Marquez-Alejandro App'x 831–32, 834–38; *see also* Oral Argument Audio Recording at 2:59–3:09 (Blondet's counsel confirming that trial testimony described Blondet as being involved in "two double homicides"). Indeed, even evidence of the Pre-La ONU Murders for which Blondet was not

---

[6] His argument, of course, presumes the government would be precluded from offering the evidence for its own other appropriate purposes. We note in addition that the government stated that it would not have consented to Blondet's offer. Blondet App'x at 268.

14

directly involved was probative of the formation of La ONU and Blondet's respective position within the enterprise. *See United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) (recognizing that "proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise"). Therefore, the district court did not abuse its discretion in denying Blondet's motion for severance.

### B. Retroactive Misjoinder

For the first time on appeal, Blondet argues that, once the trial court dismissed Counts Two and Three—relating to Martinez-Ramirez's murder—it should have *sua sponte* ordered a new trial on the ground that joinder of the conspiracy count with the murder counts prejudiced him and constituted retroactive misjoinder. We disagree.

Before trial, Blondet moved to dismiss Count Two; the district court denied the motion. Prior to the jury returning its verdict, Blondet moved pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal on all counts. As to Counts Two and Three, he argued that the government failed to prove

beyond a reasonable doubt that he killed Martinez-Ramirez for the purpose of maintaining or increasing his position in La ONU.

After the jury returned its verdict finding Blondet guilty on all counts, Blondet renewed his motion for acquittal. The district court, agreeing in part with Blondet, concluded that while the government had presented evidence that Blondet murdered Martinez-Ramirez, it failed to prove that he did so *for the purpose of* maintaining or increasing his position in La ONU. It therefore acquitted him of Counts Two and Three. The district court denied his motion for acquittal as to Count One.

The parties dispute whether our review is for plain error or abuse of discretion. The government claims that, because Blondet did not raise retroactive misjoinder or seek a new trial after the district court entered an acquittal on those counts, plain error applies; Blondet argues that we review for abuse of discretion. We need not resolve this dispute, however, because we conclude that his claim fails under either standard of review. *See United States v. Jones*, 482 F.3d 60, 78–79 (2d Cir. 2006).

We observe at the outset that in criminal cases, district judges may grant a new trial only "[u]pon the defendant's motion." Fed. R. Crim. P. 33(a); *see also id.*

16

Advisory Committee note to 1966 amendment ("Problems of double jeopardy arise when the court [orders a new trial] on its own motion." (citing *United States v. Smith*, 331 U.S. 469 (1947)); *United States v. Navarro Viayra*, 365 F.3d 790, 791, 795 (9th Cir. 2004) (holding that "a district court lacks authority to grant a new trial on its own motion," and likewise cannot "sua sponte convert[] . . . a motion to acquit [under Rule 29] into a motion for a new trial"). Blondet does not dispute that he never moved for a new trial under Rule 33, and moved only for a judgment of acquittal under Rule 29. The district court thus did not have the authority to grant a new trial on Count One, even after it entered a judgment of acquittal for Blondet on Counts Two and Three.

Even assuming the district court did have such authority, however, Blondet has not established that the doctrine of retroactive misjoinder entitled him to a new trial on Count One. "Retroactive misjoinder refers to circumstances in which the joinder of multiple counts was proper initially, but later developments[,] such as a district court's dismissal of some counts for lack of evidence . . . [,] render the initial joinder improper." *Jones*, 482 F.3d at 78 (internal quotation marks omitted and alteration adopted). To be entitled to a new trial on the ground of retroactive misjoinder, a defendant "must show compelling prejudice, such as prejudicial

17

spillover" of evidence from the dismissed counts. *Id.* (citations and internal quotation marks omitted). When evaluating whether prejudicial spillover occurred, we consider: "(1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong," *Id.* (internal quotation marks omitted). Our application of these factors to the totality of the circumstances in this case leads us to the conclusion that there was no prejudicial spillover.

We begin our analysis with the second factor (similarity of remaining counts), as we find it most persuasive under the facts presented here. The government contends that there is no prejudicial spillover because evidence of the Martinez-Ramirez murder was independently admissible in support of the racketeering conspiracy count. We agree that prejudicial spillover is unlikely "where the vacated and remaining counts emanate from similar facts, and the evidence introduced would have been admissible as to both." *United States v. Naiman*, 211 F.3d 40, 50 (2d Cir. 2000) (internal quotation marks omitted). The

government "intend[ed] to offer evidence of acts of violence" to prove the existence of the conspiracy through various predicate murders, including the murder of Martinez-Ramirez. *See* Government's Updated Enterprise Letter at 8–9, *United States v. Blondet*, No. 16-CR-387 (JMF) (S.D.N.Y. Dec. 3, 2021). That the evidence was insufficient as a matter of law for the jury to conclude that Blondet murdered Martinez-Ramirez "*for the purpose of . . .* maintaining or increasing [his] position" in La ONU for Counts Two and Three does not bear on its admissibility for Count One. Blondet App'x at 356 (quoting 18 U.S.C. § 1959(a)(1)) (emphasis added). Blondet makes no showing that the evidence relating to Martinez-Ramirez's murder would have been inadmissible for purposes of the racketeering conspiracy had he not been separately charged with the Martinez-Ramirez murder. *See United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995) (finding no prejudicial spillover where defendants made "no showing that the evidence relating to [certain] counts would have been inadmissible had they not been charged with [those counts] in the first place"). And in a trial involving Count One only, the government may still have been able to introduce Blondet's murder of Martinez-Ramirez as "related to" La ONU and the other predicate acts—for example, by showing that, because of his status as a leader in La ONU, he could

19

not tolerate her perceived disrespect of him in the presence of "people from MAPA," Marquez-Alejandro App'x at 740, or that he felt empowered by his position within La ONU to commit such a crime—thus making the murder part of the "pattern of racketeering activity" agreed to in the charged conspiracy. *See U.S. v. Burden*, 600 F.3d 204, 216, 218–19 (2d Cir. 2010) (explaining that racketeering predicate acts must be both "related to each other," and "related to the enterprise," and holding that a "jury could have reasonably inferred that . . . acts of violence were related to the [charged drug trafficking] enterprise because they were conducted to protect the [enterprise]'s members and garner them respect").

As to the first factor (inflammatory nature of the dismissed count evidence), the evidence relating to the Martinez-Ramirez murder was not so inflammatory as to incite the jury to wrongfully convict Blondet of the racketeering conspiracy count when it would not otherwise have done so. *See United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994) (observing that we examine whether the evidence on the reversed count would have "tended to incite or arouse the jury into convicting the defendant on the remaining counts"). Although certainly inflammatory, the testimony relating to the Martinez-Ramirez murder was not more provocative than the admitted evidence relating to the racketeering conspiracy detailing

20

Blondet's leadership role in a drug cartel that engaged in violent acts, including numerous other murders, and large drug deals over a long period of time. *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003) (finding that racketeering conspiracy evidence was not inflammatory where "the evidence that the government presented on the reversed counts was, as a general matter, no more inflammatory than the evidence that it presented on the remaining counts" (citations and internal quotation marks omitted)).

Here, the government presented evidence of numerous murders, including evidence that Blondet was directly involved in the predicate act murders of Hommysan Cariño Bruno and Alex de Jesus ("De Jesus"). De Jesus, an individual with mental illness, was causing disruptions in the MAPA community due to his illness. Blondet was instructed to "scold" De Jesus for his behavior but decided to kill him instead. Marquez-Alejandro App'x at 1242.[7] The jury also heard testimony that other La ONU members strangled and beat one victim, Emmanuel Correa-Romero, to death, put his body in a suitcase, shot at it "more than 30

---

[7] The district court found the testimony regarding De Jesus's murder too unreliable to consider at sentencing. *See* Blondet App'x at 387. This evidence was properly admitted in support of the racketeering conspiracy charge, however, and we may consider it when determining whether prejudicial spillover occurred.

21

times," and set it on fire. *Id.* at 353–56. The jury heard testimony and viewed forensic evidence of Carlos Barbosa's murder, including an autopsy report and crime scene photos depicting his body. Thus, the evidence of the Martinez-Ramirez murder was not more inflammatory than the evidence of other violent acts the jury heard relating to the racketeering conspiracy.

Finally, we turn to the third factor (strength of the evidence on the remaining count). Here, the independent evidence on the racketeering conspiracy count was overwhelming. The jury found that Blondet was involved in a racketeering conspiracy that involved *several* types of predicate acts. In addition to finding that the conspiracy involved more than two acts of murder or attempted murder, the jury found that it involved more than two acts of drug trafficking and more than two acts of bribery. Establishing a pattern of any one of these racketeering activities would be sufficient for a racketeering conspiracy conviction. *See United States v. Zingaro*, 858 F.2d 94, 101 (2d Cir. 1988) (noting that for "a RICO conspiracy, a pattern of racketeering activity requires a finding that the defendant conspired to commit *at least* two predicate acts" (emphasis added)). Thus, Blondet has not met the "extremely heavy burden" of demonstrating that he suffered prejudicial spillover from Counts Two and Three necessitating a new trial on the

22

racketeering conspiracy count. *United States v. Simels*, 654 F.3d 161, 171 (2d Cir. 2011) (internal quotation marks omitted).

### III. Marquez-Alejandro's Challenges

#### A. Venue

We next address Marquez-Alejandro's argument that the district court erred by determining that venue for prosecuting the charged crimes lay in the Southern District of New York. Venue properly lies "in any district in which a conspirator committed an overt act in furtherance of the criminal scheme," *United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007), and "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (internal quotation marks omitted). Here, the Indictment adequately alleges that La ONU "traffick[ed] cocaine" into the Bronx and engaged in racketeering activity from 2004 to 2016 "in the Southern District of New York and elsewhere." Blondet App'x at 203, 205.

To the extent Marquez-Alejandro argues that the trial evidence failed to establish venue in the Southern District of New York, this claim also lacks merit. Trial testimony revealed that Marquez-Alejandro sent approximately twenty

23

kilograms of cocaine "to New York City" per month, Marquez-Alejandro App'x at 827, and that Blondet traveled to New York on Marquez-Alejandro's behalf "with kilos of cocaine," *id*. at 824.  It was therefore reasonably foreseeable to Marquez-Alejandro that actions in furtherance of the conspiracy would be taken by Blondet in the Southern District of New York.  *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 75 (2d Cir. 2018).

## B.  Sufficiency of the Evidence

Lastly, Marquez-Alejandro challenges the sufficiency of the evidence presented to establish his guilt beyond reasonable doubt.  After reviewing the record, we disagree.

"A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict."  *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011); *see also United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (stating that we "defer[] to the jury's assessment of witness credibility and its assessment of the weight of the evidence" (citations and internal quotation marks omitted)).

24

During the three-week trial, the jury heard testimony from numerous witnesses, including four cooperators who were members of La ONU, about the activities of La ONU and Marquez-Alejandro's role within the enterprise. The jury was presented with voluminous physical and other evidence, including intercepted telecommunications, photographs, videos, ballistics findings, autopsy reports, and seized narcotics from which the jury could conclude beyond a reasonable doubt that Marquez-Alejandro was a founder and leader of La ONU, and that La ONU engaged in a pattern of several types of racketeering activity, including both murders and large drug transactions. The district court observed, correctly, that the evidence of Marquez-Alejandro's guilt was "overwhelming." Blondet App'x at 347. Because the record in this case amply supported the jury's finding of guilt, Marquez-Alejandro's sufficiency challenge fails.

We have considered the parties' remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

25